Goldie **EUBANKS**, Sr., Petitioner,

v.

The **STATE OF FLORIDA**, Respondent.

Harold **JENKINS**, Petitioner,

v.

The **STATE OF FLORIDA**, Respondent.

Richard Alvin **EUBANKS**, Petitioner,

v.

The **STATE OF FLORIDA**, Respondent.

Carl Wilson **GINN**, Petitioner,

v.

The **STATE OF FLORIDA**, Respondent.

Nos. 64–294–Cr–J to 64–297–Cr–J.

United States District Court
M. D. Florida,
Jacksonville Division.

June 10, 1965.

Tobias Simon, Irwin J. Block, Miami, Fla., Bernard S. Mandler, Miami Beach, Fla., for petitioners.

Dan R. Warren, State Atty., Holly Hill, Fla., for respondent.

McRAE, District Judge.

The Court has before it for consideration four companion cases which basically involve the same questions of law. On November 14, 1963, the Grand Jurors of the State of Florida, in and for St. Johns County, returned separate indictments against Harold L. Jenkins, Carl Wilson Ginn and Richard Alvin Eubanks, charging each of them with murder in the second degree. The Grand Jury also returned an indictment on the same date against Goldie Eubanks, Sr., charging him with the offense of being an accessory after the fact. Each of the indictments returned against the four defendants was prepared by filling in blank spaces on printed forms which appear to be used customarily in preferring charges for murder in the second degree and accessory after the fact.

Following the return of the indictments, various steps that are substantially the same in each of the four cases were taken in the state circuit court. Throughout all of these proceedings the defendants have been represented by able counsel. On November 27, 1963, the defendants filed a number of discovery motions. Argument was heard on these motions without delay and they were promptly ruled upon on December 18, 1963, by an experienced state circuit court judge who' accorded defendants a wide scope of discovery for a criminal case.

On May 19, 1964, each of the defendants filed in the state circuit court a petition for change of venue in which it was alleged that it would be impossible to receive a fair and impartial trial in St. Johns County on the pending charges. The specific grounds alleged in support of the petition for change of venue are substantially the same as the allegations in the petitions for removal which will be hereinafter examined. (Although amended petitions for change of venue were filed on June 8, 1964, the grounds are not materially different from the petitions which were first filed.) The petitions for change of venue were supported by affidavits. The State of Florida opposed the petition for change of venue in each case by filing a "Traverse" with supporting affidavits.

On August 25, 1964, the state circuit court, after "having heard testimony and considered the evidence", entered an order in each case denying the petition for change of venue.

On October 19, 1964, each of the defendants filed a petition for removal from the Circuit Court for the Seventh Judicial Circuit of the State of Florida to the United States District Court for the Middle District of Florida "for trial pursuant to 28 U.S.C. Secs. 1443, 1446". Petitioners thus seek to invoke jurisdiction pursuant to the basic section of Title 28 relating to civil rights cases.[1]

---

1. 28 U.S.C. § 1443 reads as follows:

 Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

The petitions for removal make general recitations that the arrests were subterfuges, that there was no probable cause, that the prosecutions were for the purpose of suppressing the exercise of free speech and were in violation of the equal protection and due process clauses of the Constitution, that the laws of the State of Florida deny Negroes rights guaranteed under Amendments V and XIV of the Constitution of the United States providing equal civil rights for all citizens, that there is de facto discrimination and de facto inequality notwithstanding any statutes of the State of Florida appearing to the contrary, that the venue statutes of the State of Florida are "de facto applicable only when the petition does not constitute grounds involving racial prejudice against negroes", and that petitioner is unable to enforce his federal rights in the courts of St. Johns County, Florida.

Petitioners allege particularly, as grounds for invoking the provisions of 28 U.S.C. § 1443, the following: that the court sits in a community which is hostile to and inflamed against Negroes and particularly against the several defendants; that large billboards appear in the county calling for impeachment of Chief Justice Earl Warren; that the Circuit Court of St. Johns County has denied the petitions for change of venue; that the Sheriff of St. Johns County has openly stated that petitioners are guilty of the pending charges; that the deceased, a white male, was killed while riding in a car in which the son of the president of the Ancient City Gun Club, an acknowledged Ku Klux Klan sympathizer and a militant opponent of integration, was also riding; that the Circuit Court refused to admit in evidence at the hearing on petitioners' applications for change of venue certain testimony given in the United States District Court describing racial tensions in St. Johns County;

that the Ku Klux Klan provided pallbearers at the funeral of the deceased; that there were numerous shootings and bombings going on in St. Johns County, making it impossible for a fair and impartial jury to be selected; that law enforcement officers have arrested and jailed members of the Negro race without cause in St. Johns County; that several hundred people were arrested in St. Augustine in connection with civil rights demonstrations and initially required to post exhorbitant and unreasonable bonds; that the general opinion in the minds of the majority of the public in St. Johns County is that members of the Negro race, and particularly the petitioners, are not entitled to the same rights as every citizen of the United States; that the home of one Dr. Richard Hayling, whose office was used for preparing defenses to the pending charges, "was shot up, killing a dog inside the house"; that the economy of St. Johns County has suffered setbacks from civil rights demonstrations causing a majority of the people to be prejudiced against the colored race and particularly the petitioners, and that members of the Negro race are so intimidated as to make it impossible for the petitioners to secure truthful and unbiased testimony from the witnesses who are in fear of their lives for testifying on behalf of petitioners.

The essence of the argument of petitioners is that they *will be* denied a fair trial in the courts of Florida in St. Johns County because of the community prejudice against Negroes; that they have been denied a change of venue by the state court, and thus they have a right to removal to this Court by virtue of § 1443.

The Court heard extensive arguments in the present case from counsel for petitioners, who are the defendants in the pending criminal cases, and counsel for respondent, the State of Florida.

(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

In the opinion of the Court one narrow question is presented: Does 28 U.S.C. § 1443 give the petitioners the right to removal from the courts of the State of Florida on charges of violating concededly valid statutes in the absence of any allegation that any statute or constitutional provision of the State of Florida deprives defendants of equal protection of the laws as far as the trials of *these* cases by the state court is concerned?

It was argued by counsel for petitioners that the case of Rachel v. State of Georgia, 342 F.2d 336 (5 Cir. 1965), rehearing denied, 343 F.2d 909, is controlling in the present case. In *Rachel* it was noted by the Fifth Circuit Court of Appeals that the latest pronouncement upon the meaning of Section 1443, which was passed as a part of the first post-bellum civil rights act in 1866, 14 Stat. 27, appears in the historic case of Commonwealth of Kentucky v. Powers, 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633 (1906). *Powers* held in effect that only formal impediments, stemming from state legislation, could give rise to such deprivations of equal civil rights as would allow a defendant to invoke federal jurisdiction by removal pursuant to § 1443.

After an examination of certain phases of the historical evolution of civil rights legislation, the Court of Appeals declined to predict whether or not the Supreme Court today would recognize the standards laid down in the *Powers* case inasmuch as there was no reason to reach that question in *Rachel*. The Court specifically found that the petition for removal adequately alleged a denial of equal civil rights by virtue of the statute under which the defendants were being prosecuted in the state court.

Petitioners also relied upon Robinson v. State. of Florida, 345 F.2d 133 (5 Cir. 1965). *Robinson* clearly affords no support for the contentions made by petitioners, but simply recognizes that the civil rights act of 1964 provides for the review by appeal or otherwise of an order remanding a case to the state court from which it was removed pursuant to § 1443.

Hamm v. City of Rock Hill, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964), relied upon in argument, likewise has no bearing on the disposition of the present case. No attack has been made on the validity of the statutes upon which petitioners are being prosecuted, and these statutes have been on the books of Florida for many years. The basic question of abatement, as it was developed in *Hamm*, and the problems of removal under § 1443 are wholly unrelated.

The statutes involved in the present cases are utterly unrelated to any matter dealing with civil rights, and they apply with equal force to all persons. Surely no state statute could be more basic to the preservation of law and order than a statute prohibiting unlawful homicide, or a statute dealing with an accessory to such an act. In the present cases there are no allegations, in any part of the records, that any provision of the Constitution of Florida or any statutory law of this state has resulted in a denial of the equal civil rights of the petitioners as regards the pending prosecution, and there are likewise no allegations of any act under color of authority derived from any law providing for equal rights or for refusing to do any act on the ground that it would be inconsistent with such law.

This Court is of the opinion that the presently pending petitions for removal in effect constitute an effort by the petitioners to review the action of the state court circuit judge in denying the efforts of the petitioners to effect a change in venue, and no showing has been made herein to justify such a review by the United States District Court.

Virginia v. Rives, 100 U.S. 313, 25 L.Ed. 667 (1880), as quoted with approval in *Powers*, sets forth with inescapable logic the reasons why state court proceedings should not be interrupted in this fashion. To paraphrase the holding in *Rives*: When a statute of a state

denies a person his federally secured rights, or interposes a bar to his enforcing such rights in the state judicial tribunals, it is fair to presume that the state courts will be controlled by the state statute. In such a case a defendant may affirm on oath what is necessary for removal. This Court could take judicial notice of the state statute and dispose of the case speedily and without a factual hearing. Such a case is clearly within the provisions of § 1443. But when a subordinate officer of a state or private citizens, as is alleged to be the case before this Court, undertake to deprive an accused party of such rights, it can hardly be said that he is denied, or cannot enforce, "in the judicial tribunals of the state" the rights which belong to him. In such a case there are no dictates in the state law or constitution which are inconsistent with federal rights, and it should be presumed that the state courts will enforce the rights secured by the federal constitution. If the state courts fail to do their duty, this Court will correct the wrong. But such cases are not within the provisions of § 1443. Denials of equal rights in the actions of the judicial tribunals of the state are left to the review powers of this Court. This is not a mere technical rule nor a rule of convenience. It goes to the very heart of the division of authority between state and federal courts. It is important that state courts not be the final arbiters of important rights secured by federal law, but it is equally important that the state courts be left free and unfettered in an orderly fashion to administer those state laws that are not inconsistent with federal law.

If the petitions for removal are granted on the grounds which are alleged herein, a precedent would be created which would result in virtual chaos in the state and federal courts. A lawyer, however meager his endowments, would never overlook the opportunity in a felony case to verbalize a situation which would require an interruption of the state court proceedings for a hearing and factual determination by a federal court. The basic concepts of federalism and comity would be destroyed and a Pandora's box of confusion would be thrown open.

Petitioners have urged that the refusal of the federal court to take cognizance of these cases, pursuant to the provisions of § 1443, will result in inordinate delays in the disposition of the cases, with the result that innocent persons will languish in jail, although there is no probable cause to hold them there. (It was admitted, upon interrogation, that all petitioners in the present cases are enlarged upon bond.) It is the opinion of the Court, on the other hand, that exactly the contrary result would take place if the federal courts are to assume jurisdiction in cases of the kind now under consideration. The inevitable result would be to block, obfuscate and delay the orderly procedures in state courts.

Caution and judicial restraint, in situations of the kind now under decision, must be the watchwords of the courts in order to avoid the creation of bad law.

It is the opinion of the Court that Congress did not intend that cases of this kind, on the records now before the Court, be removed. This Court finds it unnecessary to speculate or anticipate what future construction the Supreme Court may give to § 1443. The decision reached herein is confined to the facts and the record now before the Court.

The Court has therefore reached the conclusion that the motions to remand in the four cases presently pending should be granted.

Orders will be entered in accordance with this opinion.